**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cr-20738-BLOOM/Goodman**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CARLOS MAHECHA,

Defendant.

______________________________/

**ORDER ON DEFENDANT'S**
**MOTION TO DISMISS THE INDICTMENT**

**THIS CAUSE** is before the Court upon Defendant Carlos Mahecha's Motion to Dismiss the Indictment, ECF No. [63], filed on May 23, 2024. The Government filed a Response in Opposition, ECF No. [67], to which Defendant filed a Reply, ECF No. [74]. The Court has reviewed the Motion, all opposing and supporting submissions, the record in the case, the applicable law, and is otherwise fully advised. For the reasons set forth below, Defendant's Motion to Dismiss the Indictment is denied.

## I. BACKGROUND

On November 5, 2019, Defendant was charged in an Indictment, ECF No. [3], with ten Counts: one Count of Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349 (Count 1) and nine Counts of Wire Fraud in violation of 18 U.S.C. § 1343 (Counts 2-10). Defendant seeks to dismiss the Indictment for failure to state offenses under Sections 1349, 1343, and 2 of Title 18, United States Code. Counts of Wire Fraud. The Indictment alleges the following conduct:

Defendant was a managing member of Bal Harbour Quarzo, a Miami-based limited liability company. On or about October 25, 2007, Bal Harbour Quarzo purchased, and thereafter operated, the following real property in Bal Harbour, Florida: (a) twenty (20) co-operative parcels (hotel units) located in a small boutique hotel at 290 Bal Bay Drive, Bal Harbour, Florida; (b) a vacant building located at 291 Bal Bay Drive, Bal Harbour, Florida, and (c) a building located at 10250 Collins Avenue, Bal Harbour, Florida that operated as an apartment complex (collectively, the "Property"). Bal Harbour Quarzo initially developed the Property as a condominium conversion project. However, in 2008 that business plan became economically unviable. As a result, Bal Harbour Quarzo began developing the Property as a boutique hotel. Concurrent with the disruption of its original business model, Bal Harbour Quarzo did not adhere to the terms of its promissory notes. Specifically, the promissory notes were not repaid by their maturity dates, and the required semi-annual interest payments were made sporadically or not at all. As a result, beginning in 2010, multiple investors filed lawsuits in state courts against Bal Harbour Quarzo, primarily in the Eleventh Judicial Circuit in Florida. Several of those lawsuits resulted in judgments and/or garnishments against Bal Harbour Quarzo. Defendant and his co-conspirators continued to solicit additional investors in Bal Harbour Quarzo and issue additional promissory notes until November 2016. To induce investors to invest money with Bal Harbour Quarzo, Defendant and his co-conspirators made, and caused others to make, numerous materially false statements to investors and concealed and omitted to state, and caused others to conceal and omit to state, material facts to investors, including, among others, the following:

**1. Materially False Statements**

a. that the interest rate on the unpaid principal balance of the promissory note would be no less than 7% per annum; and

b. that interest would be paid semi-annually.

**2. Concealment and Omission of Material Facts**

c. that new investor money was used to pay prior investors;

d. that multiple prior investors had filed lawsuits against Bal Harbour Quarzo;

e. that multiple prior investors had obtained judgments and/or garnishments against Bal Harbour Quarzo;

f. that Bal Harbour Quarzo was not consistently making payments on the Mercantil mortgage used to fund the purchase of the Property; and

g. that Defendant and his co-conspirators used investor money for their personal use and the use of others.

Defendant's misrepresentations, omissions, and actions caused investors to wire money through interstate and foreign commerce into the Bal Harbour Quarzo bank account at Mercantil in the Southern District of Florida. On or about July 12,2017, Bal Harbour Quarzo sold the Property for approximately $18 million. At the time of this sale, not all of the Bal Harbour Quarzo investors had been repaid. The outstanding principal amount owed to the Bal Harbour Quarzo investors is approximately $39 million.

As to the Wire Fraud scheme, the Indictment alleges that Defendant and his accomplices had the purpose to defraud investors and to fraudulently obtain investor funds in connection with the sale of promissory notes, by: (a) soliciting and causing others to solicit millions of dollars from investors through materially false and fraudulent pretenses, representations and promises; (b) intentionally failing to utilize investor funds in the manner that the defendant, his accomplices and others had promised; (c) misappropriating and converting investor funds for his own benefit and the benefit of others without the knowledge and authorization of the investors;

and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense. Each Wire Fraud Count refers to the following wire:

> Count 2: 11/07/2014: Investor B.S. wired $280,000 from Morgan Stanley Smith Barney LLC through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 3: 11/12/14: Investor R.G. wired $310,000 from Morgan Stanley Smith Barney LLC through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 4: 03/11/15: Investor B.C. wired $49,900 from Wells Fargo Bank through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida.
>
> Count 5: 03/11/15: Investor B.C. wired $13,900 from Wells Fargo Bank through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 6: 05/11/15: Investor A.A.S. wired $70,000 from Citibank NA through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour's account at Mercantil, in the Southern District of Florida;
> Count 7: 05/29/15: Investor A.J.S wired $105,000 from UBS Switzerland through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 8: 05/29/15: Investor P.B. wired $50,000 from JP Morgan Chase Bank through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 9: 11/10/15: Investor J.L. wired $70,000 from Citibank NA through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida;
>
> Count 10: 02/04/16: Investor A.J.S. wired $31,667 from UBS Switzerland through the Federal Reserve Bank of New York's Fedwire Funds Service to Bal Harbour Quarzo's account at Mercantil, in the Southern District of Florida.

The Defendant seeks dismissal, arguing that the Indictment fails to sufficiently charge that Defendant engaged in a scheme to defraud under under *Ciminelli*, *v. United States*, 143 S.Ct. 1121 (2023) and under Eleventh Circuit precedent and the Wire Fraud Counts fail to adequately

inform the Defendant of the criminal offense. The Government responds that the Indictment provides the Defendant with legally sufficient notice of the charges against him and does not rely on a "right to control" theory of culpability under the Wire Fraud statute, so that *Ciminelli*, *v. United States*, 143 S.Ct. 1121 (2023) is inapposite.

**II. LEGAL STANDARD**

Under Federal Rule of Criminal Procedure 7(c)(1),

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated.

Fed. R. Crim. Pro. 7(c)(1). A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b). A defendant may challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012). "Under Fed. R. Crim. P. 12(b) an indictment may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987) (citations omitted). On a motion to dismiss the indictment, the district court must not "pierce the pleadings or make a premature resolution of the merits of the allegations." *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978). Instead,

> [i]n ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes.

*United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006) (emphasis in original) (citation omitted).

> An indictment is sufficient "if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense."

*United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998) (quoting *United States v. Dabbs,* 134 F.3d 1071, 1079 (11th Cir.1998)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974). Though, an indictment "may follow the language of the statute[,]" still:

> 'It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars.' *United States v. Cruikshank*, 92 U.S. 542, 558, 23 L.Ed. 588. An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.' *United States v. Simmons*, 96 U.S. 360, 362, 24 L.Ed. 819.

*Russell v. United States*, 369 U.S. 749, 765 (1962). Even when an indictment "tracks the language of the statute, 'it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged.'" *United States v. Bobo,* 344 F.3d 1076, 1083 (11th Cir.2003) (citing *Russell,* 369 U.S. at 765).

The Indictment's allegations are assumed to be true and are viewed in the light most favorable to the Government. *See Torkington*, 812 F.2d at 1354.

## III. DISCUSSION

### A. Sufficiency of the Indictment

Defendant contends the Indictment does not provide any information regarding the alleged misrepresentations and omissions made to each investor, by whom or when as to Counts

2-10 for Wire Fraud. ECF No. [63] at 11-12. Additionally, Defendant asserts the Indictment fails to connect any of the misrepresentations or omissions to any of the nine wire transfers. *Id.* The Government responds that the Indictment is legally sufficient because it contains the elements of the offense as well as the facts of the commission of the offense: specifically, it sets forth the date and amount of each wire underlying the substantive counts, as well as the initials of the investor who sent each wire. ECF No. [67] at 7-8. The Government argues it need not do more to charge Defendant with the offense. *Id.*

Under the Wire Fraud statute,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both….

18 U.S.C. § 1343.

**i. Misrepresentations Made to Each Investor**

The Court first addresses Defendant's argument that the Indictment fails to provide any information regarding the alleged misrepresentations and omissions made to each person to Counts 2-10 for Wire Fraud, and are insufficiently connected to the individual wire fraud and investor under each Count. ECF No. [63] at 11-12. Looking to the face of the Indictment, the Court finds that it states "the facts and circumstances" of the material misrepresentations and omissions at issue. *Bobo,* 344 F.3d at 1083. The Indictment explains that the purchase price of Defendant's property "was funded by promissory notes issued by Bal Harbour Quarzo to individuals recruited by CARLOS MAHECHA and his co-conspirators." ECF No. [3] at 2,

incorporated to the Wire Fraud Counts at 5.[1] However, "the promissory notes were not repaid by their maturity dates, and the required semi-annual interest payments were made sporadically or not at all." *Id.* at 4. The Indictment charges that Defendant made or caused others to make materially false statements to investors including the below:

**Materially False Statements**

a. that the interest rate on the unpaid principal balance of the promissory note would be no less than 7% per annum; and
b. that interest would be paid semi-annually.

**Concealment and Omission of Material Facts**

c. that new investor money was used to pay prior investors;
d. that multiple prior investors had filed lawsuits against Bal Harbour Quarzo
e. that multiple prior investors had obtained judgments and/or garnishments against Bal Harbour Quarzo;
f. that Bal Harbour Quarzo was not consistently making payments on the Mercantil mortgage used to fund the purchase of the Property; and
g. that CARLOS MAHECHA and his co-conspirators used investor money for their personal use and the use of others.

*Id.* at 4-5, alleged and incorporated to the Wire Fraud Counts at 6. As such, the Indictment states with sufficient specificity what "material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property" underlies Counts II-X. *United States v. Maxwell,* 579 F.3d 1282, 1299 (11th Cir.2009) (emphasis added). In doing so, it states the underlying conduct for the first element of wire fraud.

Defendant is correct that the Indictment does not specify the misrepresentations and omissions made to *each individual investor*, such as by whom or when these misrepresentations were made. However, as the Government points out, it need not show that the defendant "'contemplated harm to a specific, identifiable victim,'" or even that he "personally knew of, communicated with, or directed activities towards" a specified victim. *See United States v.*

[1] Express incorporation of factual allegations from other Counts is permitted. *United States v. Schmitz*, 634 F.3d 1247, 1262 (11th Cir. 2011)

*Munoz*, 430 F.3d 1357, 1369 (11th Cir. 2005) (quoting *United States v. Henningsen*, 387 F.3d 585, 590 (7th Cir. 2004)). Here, the Indictment sets forth the materially false statements and concealed/omitted facts made to investors before setting forth the specific wire underlying the Count, and financial institutions of each wire for each Count.

An indictment need not be more specific to survive a motion to dismiss under Eleventh Circuit precedent. In *Steele*, the indictment charging the defendant for dispensing controlled substances failed to state the "time, location, drug amount, and purchaser" of the charged conduct. *United States v. Steele*, 178 F.3d 1230, 1234 (11th Cir. 1999). The Eleventh Circuit noted that "under the terms of the statute, time, location, drug amount, and purchaser are not essential elements of the offenses charged in this case." *Id.* at 1234. Accordingly, the Eleventh Circuit found the indictment was sufficient when "the government alleged that Steele illegally dispensed four specific controlled substances within a period of four months." *Id.* Such a level of generality was sufficient to allow Steele to prepare his defense "[b]ecause Steele filled counterfeit prescriptions, he has records and receipts to which he can refer to identify the dates of the alleged offenses." *Id.* at 1234–35. Here, the Indictment is much more specific than the indictment in *Steele*: it gives the specific wire date, initials of the investor/victim involved, the financial institutions involved, accompanied by the misrepresentations made, and asserts that Defendant solicited or caused others to solicit money from these investors. Cumulatively, the allegations are legally sufficient to place Defendant on notice of the conduct charged.

Wire Fraud does not require "that [Defendants] personally interacted with the named victims" so the indictment is not deficient for failing to identify each individual interaction with each investor. *United States v. Munoz*, 430 F.3d 1357, 1368–69 (11th Cir. 2005). In *Munoz,* the defendant challenged his conviction on appeal based on the sufficiency of the evidence, and the

Eleventh Circuit considered the evidence presented at trial. As opposed to on a motion to dismiss, the Eleventh Circuit was not bound by the four corners of the indictment. *Munoz* involved a charge of Mail Fraud, which shares the same element as Wire Fraud. *See, e.g., Maxwell*, 579 F.3d at 1299. There, the Eleventh Circuit stated that "'[t]he crime of mail fraud does not include an element requiring a contemplated harm to a specific, identifiable victim.' It is irrelevant whether or not [Defendants] personally knew of, communicated with, or directed activities towards the six named victims." *Munoz*, 430 F.3d at 1368–69 (quoting *United States v. Henningsen,* 387 F.3d 585, 590 (7th Cir. 2004)). Similarly, the criminal offense of Wire Fraud does not require the Government to establish that Defendant communicated the misrepresentations and omissions to each investor as an element of the claim.

"'It is not necessary for an indictment ... to allege in detail the factual proof that will be relied upon to support the charges. That information, if essential to the defense, can be obtained by a motion for a bill of particulars and failure to grant such a motion may be reversible error.'" *United States v. Sharpe*, 438 F.3d 1257, 1263 n. 3(11th Cir. 2006) (quoting *United States v. Crippen,* 579 F.2d 340, 342 (5th Cir.1978)). Defendant has not moved for such a bill of particulars.

As detailed further below, the Indictment properly presented the essential elements of the charged offense and included "a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." *Bobo,* 344 F.3d at 1083. It need not do more to survive a motion to dismiss.

**ii. Sufficiency of the Indictment**

Second, the Court determines whether the Indictment is sufficient i.e. whether it "(1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to

be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *United States v. Steele*, 147 F.3d 1316, 1320 (11th Cir. 1998) (citation omitted).

The Court finds that the Indictment meets the first requirement as it "presents the essential elements of the charged offense[.]" *Id.* at 1320. The elements of Wire Fraud are as follows:

> a person (1) intentionally participates in a scheme or artifice to defraud another of money or property, and (2) uses or 'causes' the use of the mails or wires for the purpose of executing the scheme or artifice." *United States v. Ward,* 486 F.3d 1212, 1222 (11th Cir.2007) (citing *United States v. Hewes,* 729 F.2d 1302, 1320 (11th Cir.1984) (mail fraud), and *United States v. Hasson,* 333 F.3d 1264, 1270 (11th Cir.2003) (wire fraud)). The first element, a scheme or artifice to defraud, "requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property."[57] ***1239** *United States v. Maxwell,* 579 F.3d 1282, 1299 (11th Cir.2009) (emphasis added). "A misrepresentation is material if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed." *Id.* (internal quotations and alteration omitted). The second element is self-explanatory.

*United States v. Bradley*, 644 F.3d 1213, 1238–39 (11th Cir. 2011).

As discussed above, the Indictment properly charges the first element as it states which material misrepresentation, omission or concealment of a material fact underlie the scheme to defraud under the first Wire Fraud element. Further, it alleges that Defendant intentionally participated in this scheme to defraud investors of their money by stating that it:

> was a purpose of the scheme and artifice for the defendant and his accomplices to defraud investors and to fraudulently obtain investor funds in connection with the sale of promissory notes by: (a) soliciting and causing others to solicit millions of dollars from investors through materially false and fraudulent pretenses, representations and promises; (b) intentionally failing to utilize investor funds in the manner that the defendant, his accomplices and others had promised; (c) misappropriating and converting investor funds for his own benefit and the benefit of others without the knowledge and authorization of the investors; and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense.

ECF No. [3] at 6.

The Indictment also establishes the second element of the Wire Fraud statute by stating that Defendant used or caused the use of the wires for the purpose of executing the scheme or artifice. Indeed, the indictment alleges both that Defendant was "soliciting *and* causing others to solicit millions of dollars from investors[.]" ECF No. [3] at 6. Further, it states that Defendant "and his co-conspirators continued to solicit additional investors in Bal Harbour Quarzo and issue additional promissory notes until November 2016." *Id.* at 4. Accordingly, the Indictment meets the first requirement: it presents the essential elements of the charged offense.

Moreover, the Indictment meets the second and third requirements: the Indictment "(2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *Steele*, 147 F.3d at 1320. The Indictment does so by specifying exactly which wire relates to each Count of Wire Fraud. It states an exact date, the initials of the investor/victim, the amount of the transaction, the originating bank, and that it was made payable to Bal Harbour Quarzo's account at Mercantil. The Indictment is sufficiently precise to inform "the accused of the specific offense, coming under the general description, with which he is charged." *United States v. Hess*, 124 U.S. 483, 487 (1888). Unlike in *Bobo*, the Indictment makes clear that Defendant is charged with defrauding money from investors and specifically alleges the misrepresentations, fraud, and wires at issue. *Bobo*, 344 F.3d at 1084. The Indictment's specificity both "(2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *Steele*, 147 F.3d at 1320.

Accordingly, the Indictment meets the three requirements necessary to survive a motion to dismiss.

### B. Sufficiency of the Indictment Under *Ciminelli* and *Takhalov*

Defendant argues that the Indictment is also legally insufficient on two grounds. First, the Indictment fails to charge that Defendant engaged in a scheme to defraud under *Ciminelli*, *v. United States*, 143 S.Ct. 1121 (2023) since the indictment merely alleges misrepresentations and omissions made to investors regarding the Quarzo project i.e. the deprivation of valuable economic information. ECF No. [63] at 7-10. Defendant asserts this is insufficient to sustain a Wire Fraud conviction under *Ciminelli* as a right to potentially "valuable economic information" is not a traditional property right for purposes of the wire fraud statutes. *Id.* The Government responds that the Indictment is proper under *Ciminelli* as Defendant is charged with obtaining investors' funds, i.e. money, which can be done under the Wire Fraud statute. ECF No. [67] at 5. Moreover, the case is not brought under a right to control theory of liability, unlike *Ciminelli*. *Id.* Defendant replies that the Wire Fraud Counts should be dismissed as Defendant did not deprive investors of the benefit of their bargain under *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), as they kept their ownership interest. ECF No. [74] at 3. Further, Defendant argues that there is no allegation that he intended to harm the investors. *Id.*

#### i. Scheme to Defraud Under *Ciminelli*

The Court starts with Defendant's argument under *Ciminelli*. Wire Fraud is "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises[.]" 18 U.S.C. § 1343. In *Ciminelli*, the Supreme Court narrowed what property can be reached by the Wire Fraud statute, explaining that "the wire fraud statute reaches only traditional property interests. The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Ciminelli v. United States*, 598 U.S. 306, 316 (2023). In *Ciminelli,* defendants had paid associates of

former New York Governor Andrew Cuomo to obtain state-funded jobs for their companies, thus rigging the Request for Proposal process to favor their companies. The Second Circuit found that this deprived the nonprofit administering the state development initiative of "potentially valuable economic information." *Id.* at 309. Using a right-to-control theory, the "Government [had] establish[ed] wire fraud by showing that the defendant schemed to deprive a victim of potentially valuable economic information necessary to make discretionary economic decisions." *Id.* at 310. The Supreme Court stated that "[b]ecause 'potentially valuable economic information' 'necessary to make discretionary economic decisions' is not a traditional property interest, we now hold that the right-to-control theory is not a valid basis for liability under § 1343." *Id.* at 309. The jury instructions "that the term 'property' in § 1343 'includes intangible interests such as the right to control the use of one's assets'" were accordingly improper. *Id.* at 311.

*Ciminelli* is inapplicable to the scheme at issue in which Defendant is charged with scheming to obtain money. The Court looks to the face of the Indictment to determine if it is proper after *Ciminelli*. *See United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("[t]he sufficiency of a criminal indictment is determined from its face."). The scheme charged by the Indictment alleges as follows:

> It was a purpose of the scheme and artifice for the defendant and his accomplices to defraud investors and to fraudulently obtain **investor funds** in connection with the sale of promissory notes, by: (a) soliciting and causing others to solicit millions of dollars from investors through materially false and fraudulent pretenses, representations and promises; (b) intentionally failing to utilize investor funds in the manner that the defendant, his accomplices and others had promised; (c) misappropriating and converting investor funds for his own benefit and the benefit of others without the knowledge and authorization of the investors; and (d) making false statements and engaging in other fraudulent activities designed to conceal the commission of the offense.

ECF No. [3] at 6 (emphasis added). Defendant is charged with "soliciting and causing others to solicit millions of dollars from investors through materially false and fraudulent

pretenses, representations and promises[,]" ECF No. [3] at 6. Though Defendant characterizes the scheme as one to deprive investors of valuable economic information, as in *Ciminelli*, the face of the Indictment makes clear that the scheme charged is for the deprivation of investor funds, i.e. money. As this Court recently explained, "money … is not only a traditional property interest, it is squarely covered by 13 U.S.C. § 1343's text which covers 'obtaining *money* or property.'" *United States v. Sheppard*, No. 22-CR-20290, 2024 WL 2815278, at *17 (S.D. Fla. June 3, 2024) (emphasis added in *Sheppard*). A scheme to defraud investors of money squarely falls within the scope of the Wire Fraud statute, 18 U.S.C. § 1343.

Accordingly, the Court declines to dismiss the Indictment under *Ciminelli*.

**ii. Nature of the Bargain Under *Takhalov***

Next, the Court turns to Defendant's argument that *Takhalov* warrants the dismissal of the Indictment. In *Takhalov*, the Eleventh Circuit held that:

> A jury cannot convict a defendant of wire fraud … based on "misrepresentations amounting only to a deceit." *Shellef*, 507 F.3d at 108. Thus, even if a defendant lies, and even if the victim made a purchase because of that lie, a wire-fraud case must end in an acquittal if the jury nevertheless believes that the alleged victims "received exactly what they paid for." *Id.*

*United States v. Takhalov*, 827 F.3d 1307, 1314 (11th Cir.), *as revised* (Oct. 3, 2016), *opinion modified on denial of reh'g*, 838 F.3d 1168 (11th Cir. 2016). There, the Eleventh Circuit held that bar owners who had hired women posing as tourists to lure businessmen to their bar could not be convicted under the Wire Fraud statute since:

> a schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick. And this is so even if the transaction would not have occurred but for the trick. For if there is no intent to harm, there can only be a scheme to deceive, but not one *to defraud*.

*Id.* at 1313 (emphasis in original). Moreover, for there to be Wire Fraud, it must be the case that the misrepresentation goes to the "nature of the bargain." *Id.* The Eleventh Circuit adopted the Second Circuit's interpretation of the Wire Fraud statute:

> The Second Circuit has interpreted the wire-fraud statute in precisely this way. Their cases have "drawn a fine line between schemes that do no more than cause their victims to enter into transactions that they would otherwise avoid—which do not violate the mail or wire fraud statutes—and schemes that depend for their completion on a misrepresentation of an essential element of the bargain—which do violate the mail and wire fraud statutes." *United States v. Shellef*, 507 F.3d 82, 108 (2d Cir. 2007); *see also United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987)

*Id.* at 1314.

Defendant relies on *Takhalov* to argue that investors got exactly what they paid for in his case: an ownership interest in the Defendant's property. However, *Takhalov* is readily distinguishable. On the face of the Indictment, Defendant is alleged to have engaged in a misrepresentation that goes to the nature of the bargain. Unlike in *Takhalov*, investors in the instant case did not "receive[] exactly what they paid for." *Id.* at 1314. Indeed, the Indictment charges that investors did not receive the semi-annual, no less than 7% interest rate they were promised. ECF No. 3 at 4, 7. Additionally, the Indictment charges that their investment "was misappropriate[ed] and convert[ed]… for [Defendant's] own benefit and the benefit of others without the knowledge and authorization of the investors[,]" *id.* at 6, or "was used to pay prior investors[,]" *id.* at 4. That Defendant misrepresented the nature of the promissory notes and concealed that he used the money for his personal use or to repay prior investors relates to "the nature of the bargain itself" under *Takhalov*:

> a "scheme to defraud," as that phrase is used in the wire-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself. That lie can take two primary forms: the defendant might lie about the price (*e.g.*, if he promises that a good costs $10 when it in fact costs $20) or he might lie about the characteristics of the good (*e.g.*, if he promises that a gemstone is a diamond when it is in fact a cubic zirconium). In each case, the defendant has lied

> about the nature of the bargain and thus in both cases the defendant has committed wire fraud. But if a defendant lies about something else—*e.g.*, if he says that he is the long-lost cousin of a prospective buyer—then he has not lied about the nature of the bargain, has not "schemed to defraud," and cannot be convicted of wire fraud on the basis of that lie alone.

*Takhalov*, 827 F.3d at 1313–14. Lying about the interest rate and interest rate repayments is a "lie about the price" of the good, here the terms of the promissory notes. *Id.* The Indictment does not fail under *Takhalov*. Rather, the Indictment properly charges that the Defendant attempted "to obtain, by deceptive means, something to which [the defendant] is not entitled." *Id.* at 131 (citing the same). Accordingly, the Indictment alleges a "scheme[] that depend[s] for [its] completion on a misrepresentation of an essential element of the bargain—which do[es] violate the mail and wire fraud statutes." *Id.* at 1314 (quoting *Shellef*, 507 F.3d at 108).

Moreover, the Indictment properly alleges intent to harm because it alleges Defendant schemed to "depriv[e] [someone] of something of value by trick, deceit, chicane, or overreaching." *Id.* at 1312–13 (citing *Bradley*, 644 F.3d at 1240). Though "[p]roof of intent to defraud is necessary to support convictions for mail and wire fraud[,]" to establish intent, "[a]ll that is necessary is that the scheme be reasonably calculated to deceive; the intent element of the crime is shown by the existence of the scheme." *Bradley*, 644 F.3d at 1239. Because the face of the Indictment alleges a scheme to defraud where Defendant misrepresented the nature of the bargain, the Indictment sufficiently charges an intent to harm. The Court need not go further as a "court may not dismiss an indictment… on a determination of facts that should have been developed at trial." *Torkington*, 812 F.2d at 1354.

Defendant also points out that the Supreme Court just granted *certiorari* in a case that may have precedential value once resolved. ECF No. [74] at 2 (quoting *United States v. Kousisis*, 82 F.4th 230 (3d Cir. 2023), cert. granted, No. 23-909, 2024 WL 3014475 (June 17, 2024)). The

Supreme Court granted *certiorari* in *Kousisis* to resolve a 6-5 circuit split on the fraudulent inducement theory of mail and wire fraud, including on the issue of "[w]hether deception to induce a commercial exchange can constitute mail or wire fraud, even if inflicting economic harm on the alleged victim was not the object of the scheme." ECF No. [74-1] at 2. However, Defendant does not make clear why the Court should consider *Kousisis* at this stage and the Court declines to speculate whether a future decision will affect the outcome of this case.

Accordingly, the Indictment for Wire Fraud does not fail under *Ciminelli or Takhalov*.

**CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss the Indictment, **ECF No. [63]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida on July 8, 2024.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record